May it please the Court, my name is Patrick Smith. I am the attorney for the appellant in this case, Jerome Walczak. This appeal arises for this Court on cross-motions for summary judgment. The allegations in this case, as the case argued before this Court, not immediately prior, but the one before that, involves allegations of violation of the statute of limitations. The statute of limitations, as illustrated by it, the legislature and the political people in the state of California and everywhere else have taken that very seriously. It's a very serious crime, and it's a crime which invokes a lot of passion in people. And when someone is convicted of it, that is revealed in the sentencing laws that are imposed by the state of California. When somebody is accused of that crime, because of the nature of the crime, what we have is somebody who is presumed to be guilty in contrary to everything we want to believe in as lawyers and as people who respect the law. When someone is alleged to have violated that, it can ruin their lives. When someone is alleged to have violated that law, the presumption is such that everybody believes, well, they must have done something or they must be guilty. And that's what happened in this case, Your Honors, is that we have a person here who was accused some 23 years later after alleged events of engaging in inappropriate sexual misconduct with a 10-year-old or a 12-year-old girl. In this case, we believe that the evidence shows that Mr. Walczak in the case is not guilty of it, but of course that was not able to be presented because it was dismissed after the preliminary hearing in the court below. And we're here today because this attitude is what led, I believe, to the granting of the summary judgment in this case, and with no disrespect to Judge Phillips, because I don't believe that she was influenced by that. What I mean is that the evidence in the investigation that went into this case were influenced by this type of attitude towards people charged with this allegation. This case is, frankly, a strictly a Franks v. Delaware case, a case where we are alleging that the officer in this case, Detective Nuss, made deliberate falsehoods in the reports that she presented not only to the magistrate, but also to the district attorney's office, that she exhibited reckless disregard for the truth as to what was contained in the tape recordings that are of significance in the investigation in this case. Now what we have here in this case, unlike most Franks v. Delaware cases, is a case where there is not only issue of probable cause as to whether the offense occurred, because, and I think the court is familiar, under 803G, we need to have, or there needs to be, a probable cause or evidence showing independent corroboration for substantial sexual conduct. And what was alleged in this case, particularly, was that the independent corroboration of sexual conduct was the admissions of Mr. Walczak. And that is where we allege and where we believe that there are clearly, on one point, that our motion should have been granted on the plaintiff's motion for summary judgment, that there were misrepresentations and material omissions in the reports submitted to the D.A. and to the magistrate in this case. Secondly, we believe that these reports that contained these reckless disregard and contained serious omissions, and we rely mainly on three of those in this case. And in the case that Mr. Walczak filed under Section 1983, he is alleging primarily in this case that there are four, which are so significant and so material that they, the court should have granted summary judgment on that issue for the appellant in this case, or alternatively, should have allowed the case to go to the jury on the determination of whether or not these facts are true or not. First of all, in the first pretext call, it was alleged, and the complaining witness made an admission in that statement, that she was a person who actually moved and advanced in some inappropriately sexual context towards Mr. Walczak, in this case, the appellant. And then in that conversation, in the telephone, it is clear that Mr. Walczak makes the statement that, yes, that happened, and I was the one who took you away, told you this was inappropriate, counseled her, put her to bed. And importantly, the victim, or the complaining witness in the case, admits that. She admitted it in the phone call, and yet this constitutes a material admission and a material misstatement of the facts, because the detective in this case did not include that in the reports. In the reports specifically, she never made any mention that the complaining witness admitted that this was true. That is a material fact, in our view, that should have allowed for the granted summary judgment on behalf of the appellant. Secondly, in the course of the statements, the appellant repeatedly denied that any of this was true. I cited in the briefs, I think, 19 instances in the phone call where he said, no, no, that didn't happen, or words to that effect. Nothing in the reports that the appellant repeatedly denied the allegations that were made against him. Thirdly, Detective Nuss indicates in the report that he failed to deny, failed to deny the allegations by Ms. Docter. And I said, I told the court, there are 19 times in those tape recorded conversations where he says words to the effect of, no, I didn't do it. And finally, the fourth material misrepresentation or omission that we're relying on is that Detective Nuss stated in her report specifically that the appellant made the statement, he made the statement that the child stuck her tongue down his throat numerous times. She made that statement in the report, the appellant made that statement, and made that statement at the preliminary hearing that was had in this case, which corroborates what she must have told the DA and the magistrate in the case. And this is important because what happens is that, admittedly, she provides the tapes to the district attorney in this case, and we don't deny that. And so I have a, my sense is that the appellee will come up and argue that the DA had the tapes, could have listened to the tapes, but did not listen to the tapes. Our position is twofold. One is, the detectives in this case waited well over 50 weeks, and there's a one-year statute of limitations, to conduct any investigation into this case. Could I interrupt you for a moment just to go back to, you were going through the differences between the report and the transcript. And of course, reasonable minds can disagree about what the weight to give those differences. But under Hervey and those cases, your client needs to make, they describe a substantial showing of deliberate falsehood or reckless disregard for the truth. So it's a different sort of standard. It's not just a summary judgment standard. What constitutes a substantial showing? Are there any cases that give some substance to that test? Not in my review of the cases, both in the state law and in the federal cases, in terms of what a substantial showing is. I was unable to find any cases that dealt with that particular issue. Now, I understand that under those cases, that there's substantial is used in a lot of contexts. It's also used in 803G, a substantial sexual conduct. My position is in that regard that the showing needs to be material and material falsehood. And that's the Frank standard or material misrepresentation. So if your honor is referring to specifically, does he have to make a substantial showing of a material misrepresentation or a material omission? Our position would be, although there's cases that use that word substantial, that the Frank standard is clearly material or misrepresentation, and that those two terms may be coextensive. Because there's two prongs, right, under Herbie. There's the substantial showing of the deliberate recklessness, and then even without that information, there wouldn't be enough for probable cause, which is the materiality prong. That's correct. I understand that interpretation would be accurate, too, that the materiality would go, if you omitted it or put in the information in the warrant, then you evaluated the warrant, whether it's material. With regard to substantial showing, then under that interpretation, our position would be that if, separate from materiality, if there's a showing or the potential of a showing, in other words, there's an issue of material fact, as to whether the police makes a statement that could be interpreted as clearly opposite as to what the true facts are, that would be substantial. That would be, I think, on the far end of substantial. In other words, that would be clearly substantial. Now, what constitutes substantial when there's not such a black and white showing? In other words, the officer said A, and the report said A is not true. Here, I think that even if the court were to apply that interpretation, that there's a substantial showing, that here, based on the four specific misrepresentations or omissions, we would show that. And that is because, for example, on the fourth one that I was alluding to immediately before the court asked its question, that the child, that the appellant stated, the child stuck my tongue down my throat, we know that that's an absolute fabrication. There was an allegation that perhaps the complaining witness made saying that, but the appellant never said that. And that would go, that would constitute a black and white circumstance. Also the other ones before that were What are you referring to? That's at page, if the court goes to the preliminary hearing transcript, which is at the executive record. Yeah, the preliminary hearing. The statements, was this in the transcript of the two calls? It is. It's at page six of the appellant's record. And if you go to the third, well, in the, what we're dealing with is it's twofold. Because remember that Detective Nuss goes to the DA's office and to the magistrate, and her testimony is she tells them what was in the tape, which creates a somewhat of a difficult circumstance because Franks deals with the reports. And the reports say specific things. And in the preliminary hearing transcript, she says the appellant made that statement. In the report specifically, it says that the victim discussed all the times prior that he shoved his tongue down her throat and put his hands, et cetera. He said he didn't remember those things, but he wouldn't have done anything like that. So we essentially have three statements. We have the report where clearly, and all three support the Franks versus Delaware and the Hervey violations. First of all, we have a report that never says the appellant said that. And yet, at the preliminary hearing, she says, Detective Nuss, that the appellant in fact said that he did those things. Well, that's contrary to what she wrote in the report, and it's absolutely untrue if one listens to the tapes. We're still talking about the first call. Is that right? Exactly. Let's assume that you're absolutely right about the first call, that it's a total misrepresentation of the, that the detective's report is a total misrepresentation of the call. What about the second call? That seems a little more faithful. Her rendition of what was said seems a little more faithful to the truth. Well, the first thing I have to say is that, the first argument I would be that it wouldn't necessarily make any difference, except as to materiality. Because then what the court would have to do is, okay, if you took that out of the report and added it, you'd deal with materiality. Okay, so that's the first thing. The second thing is that our belief is that the context, and that's why the tapes are so important, the transcripts don't do justice to what's in the tapes, and the tapes are in fact the evidence, is that Jerome Walczak, you will see in both tapes when you hear them, that he's clearly a kind of a meek figure, someone who is very sympathetic to this young woman, or this 38-year-old woman who now is making these accusations that he wants to help her. And so in those tapes, he continues to deny what's happening, but tells the person who's masquerading as a therapist that he wants to help her. And so all of this is done in the context of wanting to help the girl get through this, because he wants to be able to assist her, having said that none of this is true, that none of this happened, but obviously something is amiss with this woman, that there is a wall that they purport to make. Now, I would agree with the court that the second pretext call, as the court put it, that Detective Nuss is somewhat more faithful to what's in the report based on what she wrote in hers. However, that doesn't take away from the fact that these were material, the four that I cited before, were so material that it overcomes that. In other words, when somebody says he admits pushing his tongue down the young girl's throat, he's determined to be corroboration of substantial sexual conduct. That's absolutely untrue. So in the other points that I made about with his failure to deny, as well as the admission that the victim makes, all of those things, in our view, are so, so material that the fact that she is somewhat more faithful to the second report is not of consequence because these things, in our belief, overwhelmed the DA or the magistrate to file the case. And the other part of this is what I said – Let me just ask you, does that mean that – Whether it does or doesn't, whether it's so overwhelming, is that what would make this a jury question rather than a summary judgment issue? I think it is, that this issue is – That it is what? That it is a jury question. I think it's material in the court to grant summary judgment, but on an issue of material fact, the jury would have to determine whether or not these were false statements. In other words, what the court – what Your Honor said about there can be some disagreement as to the importance of these statements. It's our view that these statements are clear, that they're just the opposite of what Detective Nuss says. And I think that's a jury question at a minimum, that the jury would have to decide the truth of those statements. If it went to the jury, of course, the actual tapes would be heard. Yes, the tapes would be heard, not the transcripts, although there's a local rule in California that indicates they have to have the transcripts in order to follow the tape. But the tapes would be heard. And I think that context is crucial here when you hear the tone of Mr. Walczak's voice and what he's saying, that that exacerbates the material omissions that are there. Could you address what constitutes probable cause of corroboration? Are there any cases that address that? Or how would you analyze what probable cause of corroboration means? Well, probable – corroboration essentially means – in my view, because the cases – there are very few cases and they haven't dealt with this issue of corroboration in California. But in my experience, there are essentially three kinds of corroboration that we've seen, and the statute alludes to some of them. One of them is that there's a witness to the events. The second is that there's physical medical evidence usually that corroborates something, some injury or something that is consistent with it. Or secondly, the defendant's omission – admission. In this case, that is what was alleged. And I misspoke earlier when I said, caused the DA to file the case. It's my view that Detective Nuss filed the case. She was the declarant under the warrant or under the complaint. And when she filed the case, specifically it says – and the court can look at the complaint – it says at the end of it that, under the 803G allegation, that the corroboration was the defendant's admissions. So there is no – although there may be other issues about what constitutes a corroboration, the only corroboration that is alleged in this case, and the only thing relevant to this case, is the alleged defendant's admissions. But it's not – the question is not whether the admissions corroborate. It's whether there's probable cause that the defendant's admissions corroborate. That's what I'm stumbling over. Yeah. And that's – there are a couple levels to this. And I wouldn't disagree with what Your Honor says. But there has to be probable cause of independent corroboration of substantial sexual conduct. That's the other thing. Like clear and convincing evidence, right? Pardon me? Doesn't it also have to be established clearly and convincingly? Yes. Clearly and convincingly. And it has to be substantial sexual conduct, which is also an issue in this case, is whether or not the context of what is true – in other words, this tongue issue – we allege wasn't true. The other issue is, was this probable cause of substantial sexual conduct? And our position is that it doesn't meet that element as well. Well, see, Judge Acuda's question is kind of interesting, because probable cause normally means that it's more likely than not. This clear and convincing portion of the statute adds another dimension to it. It's not just that it's more likely than not, but that it would be somewhere more than that, but less than beyond a reasonable doubt. And I agree. And I think that's what the California legislature was trying to do. They're saying, look, if you're going to make allegations that occurred more than two decades ago with no other evidence, you've got to show something more than just some – just a statement. You've got to have evidence by clear and convincing evidence showing this, because the defendant then cannot, in the criminal context, cannot defend himself otherwise. And that's why. Do you want to reserve your half a minute? I would. My 30 to 28 seconds. Okay. Thank you. Good morning, Your Honors. James Thiebaud for Detective Nuss. Morning. If it pleases the Court. I'm just confused about one thing. So is Detective Nuss the sole defendant? Yes, Your Honor. Okay. The other defendants were dismissed on summary judgment, I believe, by non-opposition to the motion – to our motion. All right. We view the first step in the qualified immunity analysis as whether – the issue being whether Detective Nuss overcame the independent prosecutorial function to review the case materials and come to a determination of probable cause. If there is evidence that the defendant told her, I didn't do it, and she writes it up as the defendant doesn't remember, doesn't she then lose her immunity? She does not, Your Honor, because there's actually a two-part process to liability. Number one is there has to have been false statements. Number two, those statements have to have essentially negated probable cause. In other words, if you take out the false statement, what's left, there can't be probable cause. Well, there's got to not only be probable cause that a crime was committed, but then, in addition, you have to show by clear and convincing evidence that it's corroborated. I mean, this is not the usual kind of criminal case. If this were filed within the original statute of limitations, we'd only be talking about probable cause and you'd be right. There's no question there's probable cause to believe a crime occurred. She testified, or she told the police, this is what he did to me. That's probable cause. That's not enough in this case. In addition to probable cause that a crime was committed, you have to show by clear and convincing evidence that it's corroborated in some substantial way. We have a little bit different interpretation of 803G, Your Honor. The way we would interpret it is the clear and convincing language simply sets up a different standard than beyond a reasonable doubt. The 803G element has to be charged. It's part of the criminal complaint. The clear and convincing standard applies to the proof in court. It doesn't apply to the investigating officer's standard. The investigating officer's standard is probable cause of corroborating evidence. It's probable cause to believe that a crime was committed within the statute of limitations. Right. To get within the statute of limitations, that has to be shown by clear and convincing evidence that it's corroborated. Ultimately, clear and convincing evidence is required. Otherwise, you can't charge a crime that's outside the statute of limitations. Well, the crime itself, of course, is the 288, Your Honor. But the hurdle that the DA has to meet to get there, of course, is clear and convincing as to the corroboration. Again, we would say the investigating officer has to have probable cause that there's clear and convincing evidence of corroboration. It's up to the prosecutor to meet that clear and convincing standard. That's why it's in... Which takes me back to my question. If she misrepresents what the corroboration is, doesn't she then lose her immunity? Or at least it's a jury question whether she did or not. As a purely theoretical proposition, I would agree. But that's not what we have in this case. He said in the first call, I didn't do it, I didn't do it, no, it never happened. And she wrote it up as he doesn't remember. But that's not what she said, Your Honor. What she said was, if I may... She said he just couldn't remember those things. What he couldn't remember, what he couldn't remember was the sexual conduct on the couch. Do you think, in all fairness, do you think reading the detective's report of the first call, it comes loud and clear that it was an adamant denial of what he did? No, definitely not. But you can't just read one snippet of the transcript. Well, how about the second one? I guess the one that I stumble over is the second transcript. He said that he felt guilty because this young girl was parading around and doing things and sticking her tongue down his mouth and he should have told her mother and should have done something to stop that. So he felt guilty that he didn't do that. And it gets reported that he said he is guilty, with capital guilty. She goes on to say because he never told her mom or never told her to stop. But I think feeling guilty about the whole thing happening and being guilty, admitting guilt to a sexual assault of a minor, is really two different things. Well, I have to go back to the sexual conduct we're talking about, Your Honor. We're talking about mutual masturbation, which does not mean that the defendant was active in the masturbation. If he allowed her to use his body to stimulate private areas, and the transcripts of the pretext calls are just rife with his statements that he feels bad, he feels guilty, because he didn't stop her from doing this, that's mutual masturbation. That's the substantial sexual conduct that we're talking about under 288. Now the 803G, Your Honor, I have to be very clear about this. Based on the case law construing 803G, the corroboration itself does not have to constitute direct evidence of the charged sexual conduct. All we're looking for is some, we're looking for corroboration of the victim's statements. In this case, the victim said there was a sexual incident on the couch where he rubbed my genitals. In the very first pretext call, the plaintiff, in this case, brings up the incident on the couch. He initiates the conversation with the detective about the incident on the couch. That is corroboration to a reasonable detective. In the subsequent pretext call, the statements about I felt guilty, those all pertain to specific statements made by the plaintiff, by the victim, that he would have her sit on his lap and there would be rubbing and that there was aggressive sexual kissing. All his statements in that regard are corroborative. We undertook a very extensive comparison in the trial court and in our appellate brief of a comparison between the report and the pretext call transcripts. You cannot find a contradiction there. I would add that if you look at the report, the detective's report, she does not purport to be setting forth raw investigative material. She undertakes a summary of her conclusions of the pretext calls. She takes her report and the tapes to the DA. It's the DA's duty at that point to independently review the raw investigative materials and determine whether there's probable cause. How did the case come to be dismissed? The DA dismissed in furtherance of justice, I believe. Didn't the DA say something like what's in the report doesn't match what's on the tape? She did, Your Honor. However, it was an extremely ambiguous statement. That's what the jury is for. That's some evidence that there is a major disconnect between what the officer reported and what the witness said. It may not be proof positive, but it's some evidence, isn't it? First of all, it wasn't presented in opposition to our motion in the trial court. What does that mean? It's in the record, isn't it? There was no foundation for that evidence in the trial court. We don't know, for example, at what point the DA had the transcripts of the tapes. Is it in the record that the alleged victim here is the spouse of a colleague of the officer? I believe she was, Your Honor. Doesn't that have some significance? She was the spouse of a member of the same Sheriff's Department. Not only that, but her husband is the one who got the investigative ball rolling. I don't think that's correct. Well, wasn't he at a seminar being put on by Detective French and heard Detective French talking about child sex abuse and then he went over and said after the meeting, my wife had something like this, why don't you go look into it? And then Detective French and Detective Nustin get into the picture? I think the evidence was more that he approached Detective French and said, my wife is going through this. Is that any different from what I just said? Well, I don't think he asked Detective French to start an investigation at that point. I think Detective French said, well, she's having a problem, have her call me. I mean... The point of my question is they didn't bring in an independent police agency. They didn't turn it over to the city police or turn it over to some other agency to investigate it. They were working on their own colleagues' case, basically. Yes, Your Honor. We don't think that's significant because what we're talking about is the knowledge, the qualified immunity of Detective Nustin. She reviewed reports of the victim's statements that were prepared by another detective and she determined to go forward with the investigation. At some point, it's an objective determination of probable cause. But there's no evidence in the record that she was being pressured to bring this investigation or was influenced by the department other than the fact that it was the wife of another detective? Well, there's no evidence she was even influenced by that, Your Honor. I'll submit unless there's questions. Thank you very much, Mr. Thiebaud. Mr. Smith, you get the last word. I just have a couple quick points. It's at 175 in the record where the district attorney says that the pretext calls did not contain exactly what was summarized by the detective. So I think that's corroboration. I just want to emphasize to the Court two quick things. One is that there is more evidence here of misrepresentation than I've tried to bring out four that were crucial to the material misrepresentation. Judge Wardlaw's comment about the felt guilty, I think that's also one. There are others as well. And I think that, for example, the spouse of a colleague and I think that that's important evidence that leads to the conclusion at a minimum that there's a genuine issue of material fact. Thank you, Mr. Smith. Mr. Thiebaud, thank you. The case just argued is submitted. We'll stand at recess. Thank you.
judges: Silverman, Wardlaw, Ikuta